OPINION
{¶ 1} Defendant-Appellant Cindy May King appeals from her conviction and sentence, following a jury trial, for Theft. She contends that her trial counsel was ineffective for having failed to interpose more than one objection to a line of questioning, during the prosecutor's cross-examination of her, intended to elicit the nature of a felony offense of which she had previously been convicted, and that the trial court committed plain error by failing to limit this line of questioning. King also contends that her trial counsel was ineffective for having failed to request a jury instruction on the concept of accident, and that the trial court committed plain error by failing to give a jury instruction on this subject.
 {¶ 2} We conclude that trial counsel was not ineffective for having failed to interpose more than one objection to the prosecutor's line of questioning, during the cross-examination of King, intended to elicit the nature of the felony offense of which she had previously been convicted. We further conclude that the trial court did not commit plain error when it failed to limit this line of questioning. We also conclude that trial counsel was not ineffective for having failed to request a jury instruction on the subject of accident, and that the trial court did not commit plain error by failing to give a jury instruction on this subject. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} King and her husband, Ronald, were employed at a Kroger store in June, 2004. They were both working in the store, during the night shift, on June 27, 2004. At about 7:00 that morning, King was checking out some items at a cash register in the store, and her husband was bagging them. Among the items King was checking out, for her own purchase and use, were six packs of cigarettes. After she scanned the items and registered the transaction, she paid with a personal check, and took the purchased items, in a shopping cart, out to the car, where her husband was waiting. It was the end of the shift, and it took her about ten minutes from the time she scanned her purchases to the time that she had completed whatever she needed to do to leave the store and go home.
 {¶ 4} James Roberts, a risk management officer at Kroger, who had previously had his suspicions aroused concerning the possibility that King and her husband might be stealing items from the store, intercepted King as she was loading the bags in her trunk, and demanded to see the receipt, so that he could compare the receipt with the items purchased. The receipt showed only three packs of cigarettes. With respect to other items purchased, the receipt appeared to be accurate.
 {¶ 5} Roberts had the Kings return to the store, where he interviewed them both. Cindy King told Roberts that she had intended to scan all of the items, including all six cigarette packs, and had thought that she had successfully scanned the items. She told Roberts that she did not realize that three of the six cigarette packs were not accounted for in the total on the receipt. Roberts did not accept King's explanation, the police were summoned, and King was arrested and ultimately charged with Theft. Her husband was not charged.
 {¶ 6} At trial, Roberts was the sole witness for the State. He testified that it is against store policy for an employee to check out their own purchases, and that when an item is successfully scanned, there is a noise, and other items may be scanned. When the machine registers that an attempt to scan has been made, but there is some problem, there may be the same noise, but it becomes impossible to scan additional items until the problem is resolved.
 {¶ 7} King, her husband, and several other witnesses testified for the defense. King testified that she was very tired at the end of her shift, that someone using the register previously had turned the sound down, and that she was talking with her husband when she was attempting to scan the cigarette packs. Her husband, in his testimony, denied that there had been any conversation at that time.
 {¶ 8} Following the conclusion of the trial, the jury returned a verdict of guilty, a judgment of conviction was entered, and King was sentenced to 180 days in jail, all of which was suspended, a fine of $250 and court costs, and two years of probation. From her conviction and sentence, King appeals.
 II {¶ 9} King asserts two assignments of error, as follows:
 {¶ 10} "APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE DUE TO (1) FAILURE TO MAKE A CONTINUING OBJECTION TO THE PROSECUTOR ELICITING PREJUDICIAL DETAILS REGARDING APPELLANT'S PRIOR CONVICTION, AND (2) FAILURE TO REQUEST A JURY INSTRUCTION AS TO THE DEFENSE OF ACCIDENT, WHERE APPELLANT WAS CHARGED WITH A `PURPOSEFUL' CRIME AND ACCIDENT WAS APPELLANT'S DEFENSE AT TRIAL.
 {¶ 11} "THE TRIAL COURT ERRED IN FAILING TO RESTRICT THE SCOPE OF THE STATE'S CROSS-EXAMINATION REGARDING APPELLANT'S PRIOR CONVICTION AND IN FAILING TO INSTRUCT THE JURY AS TO THE DEFENSE OF ACCIDENT."
 A {¶ 12} With respect both to the First Assignment of Error, which involves a claim of ineffective assistance of trial counsel, and the Second Assignment of Error, which involves a claim of plain error on the part of the trial court, the first issue concerns the scope of the State's cross-examination of King concerning her prior criminal record. The entire colloquy with which this issue is concerned is as follows:
 {¶ 13} "Q. All Right. Now, have you ever been in trouble for stealing from an employer before?
 {¶ 14} "A. No.
 {¶ 15} "Q. You never have?
 {¶ 16} "A. Not an employer, no.
 {¶ 17} "Q. Well, if you were not stealing money while you worked for an employer, was it from the — if it was not from an employer, who was it from?
 {¶ 18} "A. From the — it's not an employer. It's my — I don't know how to answer that. I've been in trouble before, if that is what you want to know.
 {¶ 19} "Q. Well, specifically, it was for theft, was it not, when you went to prison, right?
 {¶ 20} "A. Misappropriation of funds.
 {¶ 21} "Q. Okay, And what is that exactly?
 {¶ 22} "MS. FARLEY: Objection.
 {¶ 23} "THE COURT: It's proper cross.
 {¶ 24} "THE DEFENDANT: The company I was working for prior to coming to Ohio was — I was the secretary for a nursing home.
 {¶ 25} "BY MR. LEWIS:
 {¶ 26} "Q. Okay.
 {¶ 27} "A. They were asking me to improperly bill Medicare and turn in wrongful amounts for taxes.
 {¶ 28} "Q. And your husband as well?
 {¶ 29} "A. He was contacted by that company to do some work for them.
 {¶ 30} "Q. Okay. And he got in trouble in the same way?
 {¶ 31} "A. Correct.
 {¶ 32} "Q. All right. He went to prison as well?
 {¶ 33} "A. Correct.
 {¶ 34} "Q. All right. And these were felonies?
 {¶ 35} "A. Correct.
 {¶ 36} "Q. How much money are we talking about there?
 {¶ 37} "A. At that point, I think it was like $65,000 or something.
 {¶ 38} "Q. Okay. And you knew that was wrong?
 {¶ 39} "A. Well, yeah.
 {¶ 40} "Q. You did it anyway?
 {¶ 41} "A. Well, no, I didn't participate in that.
 {¶ 42} "Q. You did not go to prison for it?
 {¶ 43} "A. I went to prison.
 {¶ 44} "Q. You were convicted and you went to prison?
 {¶ 45} "A. Yes.
 {¶ 46} "Q. So you were convicted of stealing?
 {¶ 47} "A. Yes.
 {¶ 48} "Q. Okay. Now, that was not from your employer, then; that was from the government that you were convicted of stealing from?
 {¶ 49} "A. Correct."
 {¶ 50} This line of questioning by the State suggests that the prosecutor may have been uncertain concerning the exact nature of King's prior offense. That suggestion is strengthened by the following remark made by the trial judge after the jury's verdict was reported and accepted:
 {¶ 51} "THE COURT: Miss King, I want to be as fair to you as I can about all these things. I am aware from what I've heard in court today and then I looked at some of the paperwork that your attorney has regarding your prior record. I'm not exactly sure what that is all about, and you will see, if Miss Farley will show it to you, there are a couple of charges against you that are listed and then there's a disposition or two and there's a note that they can't match them up. They are not sure which ones go where. Sometimes that happens, particularly on federal issues that there's just mistakes. I want to be as fair to you as I can in deciding what the proper sentence is, so I am not going to revoke your bond on your promise to come back to court when you are required and to stay in contact with your attorney, and I'm going to send you for a pre-sentence investigation."
 {¶ 52} King recognizes that because she testified in her own behalf, the State could properly use her prior conviction for purposes of impeachment. The record suggests that the prosecutor, rather than having been disingenuous, was actually somewhat uncertain about the nature of King's prior offense. Therefore, we conclude that the trial court properly overruled the one objection that King interposed, because the State had not yet succeeded in establishing that King had previously been convicted of a felony.
 {¶ 53} We tend to agree with King that at some point much later in this line of questioning, an objection would have been valid, and should have been sustained, had it been made. It appears that the State was attempting to prove that King had previously stolen from her employer, and, when it became clear that the victim of the offense was the government, and not an employer, the State attempted to prove that King was previously convicted of stealing money.
 {¶ 54} Towards the very end of the State's closing argument, the State made it rather clear that it was asking the jury to make the forbidden inference: "This individual is an individual who has a history of being a thief. In fact, she did time in the federal penitentiary for stealing."
 {¶ 55} Although a prior felony conviction can properly be used to impeach any witness's credibility, it may not properly be used to support an inference that because the defendant committed a particular type of offense on one previous occasion, therefore she must have committed the same type of offense on this occasion. Evid.R. 404(B). In our view, the State's emphasis, in the latter portion of its line of questioning, and in its argument, upon the fact that King's prior offense was for stealing, was inadmissible under Evid.R. 403(B), and, therefore, an objection would have been proper.
 {¶ 56} In order to make out a claim of ineffective assistance of trial counsel, a defendant must not only establish that her counsel's performance fell below an objective standard of reasonable representation, she must also "prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v.Bradley (1989), 42 Ohio St. 3d 136, paragraph three of the syllabus.
 {¶ 57} In our view, the prejudice prong of the ineffective assistance of trial counsel analysis cannot be satisfied in this case. That is because the trial court correctly instructed the jury concerning the only proper use that could be made of King's prior conviction, as follows:
 {¶ 58} "Evidence was also received that this Defendant has previously been convicted of a felony theft offense. That evidence was received only for a limited purpose. It was not refused [used?] and you may not consider it to prove the character of the Defendant in order to show that she acted in conformity or accordance to that character. If you find that the Defendant was in fact convicted of the felony theft offense, you may consider that evidence only for the purpose of testing her credibility or believability and the weight to be given her testimony. It cannot be considered for any other purpose."
 {¶ 59} In view of the trial court's correct instruction to the jury concerning the only proper purpose for which this testimony could be used, and the presumption that a jury will follow the instructions given by the trial court, we cannot conclude that there is a reasonable probability that the outcome of this trial would have been different, had King's trial counsel interposed a further objection, later in the State's line of questioning concerning King's prior conviction. Indeed, defense counsel may have concluded, with some justification, that the jury might have perceived her attempt to preclude the State from completing its inquiry into the nature of the offense for which King had been previously convicted as an effort to hide critical information from the jury. Defense counsel may have made a strategic decision not to be perceived by the jury as trying to hide critical information from it, recognizing that the damaging fact that King had previously been convicted of a felony was something that could not be kept from the jury, in any event.
 {¶ 60} King makes the further argument, in connection with her Second Assignment of Error, that the trial court should have limited the State's line of inquiry concerning King's prior conviction, even without the interposition of an objection by defense counsel. This claim is governed by the plain-error standard of review, which requires an even stronger showing of prejudice than ineffective assistance of trial counsel. For the reasons already indicated, we conclude that King has failed to demonstrate a strong probability that the outcome of the trial would have been different had the scope of the State's inquiry concerning her prior conviction been restricted, given that the fact that King had previously been convicted of a felony was inevitably going to be put before the jury, King having elected to testify in her own defense.
 B {¶ 61} King next argues that her trial counsel was ineffective for having failed to request, and the trial court committed plain error by failing to give, a jury instruction on accident. As the State notes, however, in the comments to Ohio Jury Instruction 411.01, the instruction on accident, the Committee states:
 {¶ 62} "An instruction on accident is not recommended unless required by the evidence, argument or request of counsel. The claim of accident is not an affirmative defense.
 {¶ 63} "The committee recommends that no statement be given to that effect because it is unnecessary and it is confusing unless there exists a second defense on which the defendant has the burden of proof."
 {¶ 64} King offered no affirmative defense. Furthermore, as the State points out, the trial court did specifically instruct the jury that in order to find King guilty, it must find, beyond reasonable doubt, that there was present in her mind a specific intention to deprive the owner of the three packs of cigarettes without paying for them, and that: "Purpose is a decision of the mind to do an act with the conscious objective to do it, and to act purposefully is to do it intentionally and not accidentally."
 {¶ 65} We conclude that trial counsel violated no duty to her client by failing to request an instruction on accident, which would have been redundant, at best, and possibly confusing; and that even if trial counsel had been derelict in her duty in this regard, there is no reasonable possibility that the jury failed to understand that the issue in this case was whether King intended to take the cigarettes without paying for them, as opposing to having accidentally left the store without paying for them, and, furthermore, that the State had the burden of proof, beyond reasonable doubt, on that issue. Therefore, King's trial counsel was not ineffective in this regard, and the trial court did not commit error, let alone plain error, by failing to give a separate instruction on the concept of accident.
 {¶ 66} Both of King's assignments of error are overruled.
 III {¶ 67} Both of King's assignments of error having been overruled, the judgment of the trial court is Affirmed.
Grady, P.J., and Brogan, J., concur.